The next matter, number 171125, United States v. Joseph Eugene Clark. Thanks. May it please the court, my name is Peter Sear, I represent Joseph Clark. May it please the court, I would also ask Judge Barron if I may have two minutes set aside for rebuttal. You may. Thank you, Judge. This case, I'd like to raise two issues here this morning, and they're the two issues that I've raised in the brief. The first is that Mr. Clark was seized without reasonable or typical suspicion when Officer Magoon conducted an independent investigation, essentially completed the traffic stop investigation, and then went on, once he found that the identifiers, the information that Mr. Clark provided, did not check out with the dispatch or with his onboard computer, he then goes and seizes Mr. Clark in order to investigate his identity. The second issue I wanted to raise with the court is that the inevitable discovery doctrine should not be applied in this particular case because it would incentivize unconstitutional behavior and weaken the Fourth Amendment protections. With respect to issue number one, Officer Magoon does conduct a routine traffic stop. He asks the driver for their information, the driver provides it. He asks the passenger, Mr. Clark, for his information. It's provided. There is an audio and a video. Yes, but at that point, isn't it your client's activities which created the action by the officer to try to check it out? He gave him volunteered information. The officer said that if he hadn't said anything to him, he would have said nothing more to him. But your client volunteered information which didn't make any sense, at least to the officer. So he goes back to his car. He tries to run the name. Isn't that a little different at that point? I would suggest no, Judge. During cross-examination of Officer Magoon, he indicated that he had asked Mr. Clark for his information, his date of birth and name. Mr. Clark provided that. When Officer Magoon was talking to the driver, Mr. Clark then volunteered a social security number. At that time, Officer Magoon had a conversation with Mr. Clark, with the driver, and confirmed the information that was provided by Mr. Clark, his name, his date of birth and the social security number, all of which can be heard in the audio that the government has provided as an addendum. Officer Magoon admits during cross-examination that there was no, after he left that first encounter and went back to his cruiser to run the name of the driver and to run the name that Mr. Clark provided, there was no reasonable, articulable suspicion that Mr. Clark had done anything wrong. He admits that on several occasions during cross-examination during the hearing. So when he goes back to his cruiser, he's walking back. There are no independent facts that give the officer any indication that there's any wrongdoing going on with respect to Mr. Clark. He goes back to his cruiser. He runs. He asks dispatch to run the name. They're unable to confirm. He goes on his onboard computer and searches. He's not able to confirm the identifiers. He is able to do it with the driver. Essentially, he could have then simply written up the ticket for the driver, gone to her window, given her the ticket, and the stop is over. Instead, our contention is that based on, and essentially solely based on, the fact that the information provided to Mr. Clark did not come up in the database, that the officer then prolongs the stop, conmeasurably prolongs the stop. What's wrong with that? Just so I follow, suppose it was the driver who had done just what your client had done, gave a name that couldn't be confirmed. You could prolong that, right? Judge, not when there's nothing, well, there's nothing. The officer has the correct information. That's just my hypothetical. Sure. Take all the words in the interaction that occurred between the officer and your client and imagine that they actually were interactions between the officer and the driver. Yes. Couldn't the stop have lasted just as long as it did? Because he wouldn't know for sure who the driver is that he's worried about. He's trying to figure out. That's all follow-up questions. So the only thing to me that seems different here is that it's not the driver who's saying it, it's the passenger. So why does it matter if it's the passenger? Maybe it does because I can't really figure out from the case law whether when you get everything you need from the driver at a traffic stop, the fact that you heard something that didn't necessarily make sense to you from the passenger means you get to hold everybody. To address your particular question, it is different because if the officer has this, the driver is driving, and the driver has to have a license. And if the driver does not have a license and is presenting information to the officer and the officer goes back and cannot confirm that that person has a license, then that's a crime. That's driving without a license. So then it does permit the officer to go back and further the investigation. Could you argue that when a passenger doesn't give clearly identifying information, that's not articulable reasonable suspicion to prolong the stop? It absolutely is not, Judge. That is our argument. Do you have any authority for that? I'm not saying that there's necessarily authority going against you, but what is your authority for that proposition? Because it's a not inconsequential proposition you're asking us to accept. The authority that I've relied on is DePaul Tile and Henderson. In DePaul Tile, this court said that simply by not having identifiers confirmed through a database, that is not in and of itself to lead to reasonable articulable suspicion or permit the officer then to continue on with an investigation. But that's a little different than the facts that we have here. Here, he gives dates. He gives a birth date and an age which doesn't match up. He does a bunch of things that he volunteers that would raise suspicion that something is wrong here. Doesn't that take this out of the cases that you're citing? Judge Stahl, I think there's a difference. There's two encounters that occur. I'm suggesting that on the first encounter, he gives his name and date of birth and he volunteers a Social Security number. There's nothing in that first encounter, and the officer is actually able to confirm that by asking again. The passenger said, yes, that's what he said because there's moving traffic going on on the street. He then goes back. He can't confirm it. When he comes back the second time, I would agree with the court that that is when the information is being provided that is not consistent, and that is when the officer starts to realize that something is afoot here and then reasonable articulable suspicion is developing at that time. But that is after he prolongs the stop. How long is it prolonged? It's not prolonged much, Judge. How long is minutes? It's maybe, going back, if you include, it's maybe, it is minutes. But the case law does use the term measurable. And measurable, measurable can be, an instant in time can be measured. Okay, I want to make sure, I want to ask about the inevitable discovery proposition, but I want to make sure Judge Lynch has a chance to ask at least about this portion of the argument first. Judge Lynch? Yes, on your purported distinction between a passenger in a car and the driver of the car, the information that the officer turned up did suggest in the end that the driver could possibly be armed, and that he was wanted on arrest warrant. And I believe the government stresses this as a reason for pursuing identity to the passenger in the car. What is your response to that? My response, Your Honor, is that that is information that is learned after the officer goes back to the vehicle for that second time, and he does start to develop some RAS that there is an issue with Mr. Clark's identity. The officer then goes back to the cruiser, and it's my understanding that the information that you were speaking of comes to the officer during his second trip back to the cruiser when he continues his investigation. And so why does that matter? I'm sorry, Your Honor, I didn't quite hear that. Why does that matter? The information turned up shows the risk to the officers from the beginning of the traffic stop. That is, and that pertains more to, are you addressing the issue with respect to the seizure and the continuation of the investigation into the identity, or the inevitable discovery doctrine? No, I was not addressing inevitable discovery. I was addressing your contention that there is a difference between a passenger and a driver. It was my understanding, Your Honor, that the information that came up with respect to the armed endangers was with respect to Mr. Clark, the passenger. And the driver came up completely clean, and her information was readily obtainable through the dispatch and search on the computer. I believe we have two minutes left, Your Honor. Yeah, before you do that, I do want to just take a minute on that inevitable discovery. Yes, and Your Honor, this particular case, I would suggest to the Court that the safety concerns of the officer was really sort of an afterthought. And why I say that is because all of their actions in this case really showed that they were interested in searching Mr. Clark for his ID. The officer would never pass him down. Officer Linden is there. If they had followed what is standard protocol in a stop of that nature, they would have patted him down, correct? They would have. After he was pulled from the vehicle, they would have patted him down, correct. So, they would have found a theft? They may very well have found a theft, yes. So, the difference that you're raising here now is that because, I think your argument is that because the stop was elongated, therefore, there was no right to do the search, or at least use the benefits of the search, once they got to the police station. That's correct, Your Honor. But if they had followed standard protocol, they would have found it anyway, at the side of the road, in all probability. It's pretty hard to say they wouldn't have. They may very well have found it anyway, Your Honor. The issue that Mr. Clark has is that although the district court said there's mixed motives, we're suggesting that there aren't mixed motives, that they simply wanted to search him, to find an ID, to resolve this dilemma that they had, and they were not permitted to do that at that time. Okay, so let's assume that they hadn't done that, and in order for you to succeed, you have to, I assume your argument is that because the stop was elongated, and therefore became improper, that whatever happened thereafter is a nullity. Correct. That's, okay. Thank you, Your Honor. Thanks. May it please the Court, Julia Lopez for the United States. I would like to address both of the defendant's arguments, taking first the issue of whether the traffic stop in this case was unlawfully prolonged. There was a question about what length of time we're talking about here, and I think it is important to be clear about what point in time the defendant is complaining about, and how much time he's complaining about. As I understand his argument, he suggests that Officer Magoon unlawfully seized him at the time he went back to the car the second time to make sure that he had his identity information correct. If the Court looks at the record, and specifically the chronology that's in the appendix at page 298, we're talking about one minute of time between when Officer Magoon returned to the car to ask the passenger, do I have your information correct, and when the passenger gives a second and then a third date of birth. And I believe the defendant has conceded that at that point, there clearly is reasonable suspicion to investigate further. So what we're talking about here is by the time on the video, we can see it's one minute of time. Just so I'm clear, that extra minute you concede is truly extra time, in the sense that at that point there's no issue with the driver. He's cleared it up with the driver. If the driver was alone, this stop would have ended. It would not have ended, Your Honor, because he still had to write up the ticket. So does that matter? No, I don't think so. I think under the Supreme Court's recent Rodriguez opinion, prolonging the stop means any time added to the stop, whether it's in the middle or at the end. So this wasn't just activity that would have occurred during the write-up. You concede this added a minute to the stop. Yes, we concede that this added a minute to the stop. So I don't quite understand the government's argument. The idea is that, I mean, there may be an argument that you don't agree with his premise, that there was no reasonable articulation of suspicion even at the first encounter. But assuming you do, what's the significance of the fact that it's an extra minute? Is it just a minute you allowed to have an extra minute? In these circumstances, I believe so, Your Honor. What does that mean in these circumstances? Given the passenger identity request that was made here. But isn't that just an argument that it wasn't prolonged at all because there was reasonable articulation of suspicion from the get-go? That is one of our arguments, yes. If that's not the argument, I'm trying to figure out, if there was no reasonable articulation of suspicion from the get-go, and it went on an extra minute when there was no reasonable articulation of suspicion, what is the authority for saying you get an extra minute? It's the Fernandez case, Your Honor, which says that passenger identity inquiries are permissible. And the reason that they are permissible, Fernandez said, in drawing on a line of Supreme Court precedent, is that officer safety, officers are at great risk during traffic stops. We have a long line of Supreme Court cases saying that. And the Supreme Court has also said that the passenger poses as much risk to the officer as the driver. I'm still making an argument that the passenger inquiry then, maybe I'm not following, when he inquired, he asked the passenger a question. Correct. Suppose the answer does not create reasonable articulation of suspicion to then do follow-up. Yes. Is it permissible, nonetheless, to do the follow-up even if it's only a minute? Yes, we would argue that it is. And what's the authority for that? Again, I believe it's Fernandez. In other words, Fernandez says the police can ask for a passenger's identity in order to protect themselves. And in the Fernandez case, they ask for the identity, the police go back and run the passenger's identity and find that he, in fact, has a warrant. Fernandez's statement that the police are able to ask this information is meaningless if the court can't do very, excuse me, if the officer can't do very brief follow-up to make sure that they have the passenger's information correct. So basically, is the idea that just like the driver, if you ask this of the driver and the driver gave the same answer the first time as the passenger, your defense seems to concede that the officer could have then done follow-up of just the kind they did on the passenger. And your position is the driver and the passenger are identical from that perspective? At this point in time, yes, because they both pose equal safety risks to the officer. And I think that the case law is clear that that is the reason to inquire into a passenger's identity. But here's the thing that just seems different. With the driver, when I, is the concern that during the, because the stop is not going to end right away because he's going to have to write it up, he's got a passenger there who may be a danger as he's writing up the ticket, so he's got to be able to do the follow-up to figure that out. That's the idea? Yes, your honor, that is exactly the concern. Officer Magoon testified that it would take him approximately 15 to 20 minutes to fully write up the ticket. So we're talking about six minutes into the stop. He still doesn't know who the passenger is. And again, we're talking about a minute of time. So the case law talks about sort of de minimis intrusions are permissible, and we would argue that one minute is certainly de minimis. It's not the 20 minutes that this court found to be impermissible in the Henderson case, for example. And to some extent, was that minute caused by the fact of the road noise that made it unclear to the officer whether he had gotten the information correctly when he couldn't check it out? Yes, I think that's absolutely correct, your honor. If the court watches the video from Officer Magoon's cruiser, it's clear that he is having difficulty hearing. He also testified that Mr. Clark was speaking very quietly and not looking at the officer. So I would say it was a combination of the road noise and Mr. Clark's responses that caused him to go back. And if the court watches the video, too, Officer Magoon is very low-key. There's nothing aggressive in his questioning at all. It's clear that he's just trying to quickly clarify who it is that he has in order to protect his safety. The second reason, though, Judge Barrett, as you alluded to in this case, that there was nothing impermissible here is that there was, in fact, reasonable suspicion to go inquire further. I understand the district court did not make that finding below because the government had not argued it below. But if you look objectively at the facts here, and this is an objective standard, Mr. Clark provided an age and a date of birth that did not match during the initial conversation with Officer Magoon. We would suggest that that alone is sufficient for the officer to go back and inquire further. Do I have this information correct, or is this person trying to hide something from me? Can I just, to make sure I follow this idea and what we'd be saying, what we wouldn't be saying, change the fact circumstance to someone, I'm just curious what the government's view would be then. He asked the driver, reading through the whole thing with the driver, it's all resolved, he writes up the ticket, comes back to the car after handing the ticket to the driver, and asks the passenger a question about his identity. He gets an answer from the passenger that is suspicious, that doesn't quite add up. At that point, could he then prolong it? Whereas the key here, you're saying this just fits under Fernandez because he's just doing an officer safety check since he knows that he's going to be with that car for a period of time as he's writing up the ticket, so he's got to know who's in the car with the driver. Yes, Your Honor, I think it is the latter. If the stop were fully complete, I think it would be sort of dependent on the facts, whether there was reasonable suspicion to inquire further with the passenger. But our view was that this was really Fernandez, that this was a safety issue, and Officer Magoon's testimony was quite clear on that. Turning briefly to the inevitable discovery question, I see I have two minutes left. As I understand the defendant's argument, it's simply he agrees that this would inevitably have been discovered, but he's suggesting that to apply the doctrine in this case would incentivize some sort of police misconduct. Essentially, that the police made up a safety rationale where there wasn't one. In order to prevail on that, he would have to show that the district court's finding that there were mixed motives for the frisk was clearly erroneous, and we would suggest that the record, in fact, supports the district court's finding. And specifically, Officer Parity, who actually performed the frisk, testified that he did so for safety reasons because at the time he performed the frisk, he had been made aware that the person they believed they had, Joseph Eugene Clark, had a firearms warning attached to his name. Certainly, Officer Magoon testified that the frisk was done for safety reasons, because it was policy they were going to bring him back to the station, and that he also acknowledged that he was hoping to find an ID, and he acknowledged at the hearing that he understood that that was impermissible. But the district court found that there were mixed motives, but that there was no bad faith among the officers here. Again, what we see is Officer Magoon acting cautiously and expeditiously to make sure that he's both safe, and then at the time that he discovers these warrants, what's interesting here is that although he impermissibly suggested that they look for an ID, he said he was doing that to make sure they didn't take the wrong person back to the station. So we would suggest there was absolutely no bad faith on the part of the officers. There was nothing for them to be gained by impermissibly frisking Mr. Clark. Given that there were three warrants out for his arrest, they were going to take him back to the station where he would have been fully searched anyway. Judge Lynch, do you have anything? No, I do not. Thank you. Thank you. Then for those reasons and the reasons advanced in our brief, we urge the court to affirm.  Thank you, Your Honor. Officer Magoon, when cross-examined during the suppression hearing, indicated that if he had asked Mr. Clark for his identification, his information, and Mr. Clark had said, I don't have it and I'm not giving it to you, if I don't have it and I'm not giving it to you, and by the way, I'm going to walk out the door here and I'm going to walk up the street, Officer Magoon testified that that would be totally permissible and that Mr. Clark could do that. So essentially, the idea that Mr. Clark is seized, just based with respect to it being a traffic stop, I would suggest that Officer Magoon's testimony itself suggests otherwise and it indicates that he's free. I would ask the court to consider this, that suppose an individual who's a passenger, who does not have their license with him, provides their name and date of birth, the officer then goes back and runs it through the data system, it comes back, there's no other, they can't confirm it. Now, they are now coming up around, and in this particular case, it was not only at the second time when Officer Magoon goes to the vehicle, Officer Linden had arrived as well, approaching the passenger side of the vehicle, shining his light inside the passenger compartment. So that individual, who's done nothing wrong, is now being seized by law enforcement, given these circumstances, just because they're not able to confirm it on the database, which I would suggest brings this case closer to Palatano. With respect to the last issue here, there's no, Almeda does not suggest that bad faith is required, that I've read in that case. It suggests that there's unconstitutional behavior, and Officer Parody, by thrusting his hand into the pocket, that was going beyond the scope of the pat-down frisk, that was unconstitutional behavior, and we would ask that the court not apply the inevitable discovery doctrine. Thank you. Thank you.